**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| David Higdon, | ) | No. CV-11-0821-TUC-FRZ |
| Petitioner, | ) | |
| vs. | ) | **ORDER** |
| Tara Diaz, *et al.*, | ) | |
| Respondents. | ) | |

On February 20, 2011, Petitioner David Higdon, who is confined in the Arizona State Prison Complex-Lewis, Buckeye, Arizona, filed his Petition for Writ of Habeas Corpus by a Person in State Custody Pursuant to 28 U.S.C. § 2254 (Non-Death Penalty) ("Petition") (Doc. 1).  On April 27, 2012, Respondents filed their Answer to Petition for Writ of Habeas Corpus ("Answer") (Doc. 12).  Petitioner subsequently filed his Traverse re: State Prisoner Habeas Petition (Doc. 23).  The Petition is ripe for adjudication.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

The Arizona Court of Appeals stated the facts[1] as follows:

_____

[1]As these state court findings are entitled to a presumption of correctness and Petitioner has failed to show by clear and convincing evidence that the findings are erroneous, the Court hereby adopts these factual findings.  28 U.S.C. § 2254(e)(1); *Schriro v. Landrigan*, 550 U.S. 465, 473-74, 127 S.Ct. 1933, 1940, 167 L.Ed.2d 836 (2007)*; Wainwright v. Witt*, 469 U.S. 412, 426, 105 S.Ct. 844, 853, 83 L.Ed.2d 841 (1985); *Cf. Rose*

In the early morning hours of June 12, 2002, a stranger found the victim, P., lying on the ground, having been severely beaten; his shoes, watch, keys, and identification were missing. P. died shortly thereafter from "cranial cerebral injuries due to blunt force injuries of the head." The autopsy revealed fifty-one different injury sites on P.'s body, some of which had been caused by a "slender object," consistent with a baseball bat.

Katie Farabaugh, a friend of Higdon's, told police during a videotaped interview[1] that was played for the jury that she and Higdon had been "cruising" in his truck when they met P. early in the morning on June 12, 2002, and that Higdon had invited P. to smoke marijuana with him. Katie remained in the cab of the truck while P. and Higdon smoked in the bed of the truck. The truck then began shaking, and Katie saw Higdon hitting P. on the side of the head with a baseball bat and kicking him in the face. P. screamed for Higdon to stop and attempted to run away from Higdon, who chased him and continued to beat him with the bat. Katie added that she guessed Higdon may have attacked P. because he "was gay," a fact that was undisputed at trial. Katie also stated that, after the incident, Higdon had cut out articles from the newspaper about the killing and had left them, along with P.'s personal belongings, at his father's home where he was staying at the time. Upon searching the home and the yard behind it, police officers found P.'s driver's license, his obituary, and other news articles describing the murder, as well as his key chain, keys, shorts, shoes, socks, watch, glasses, and a baseball bat. The shorts, shoes, socks, watch, and bat all contained P.'s blood.

---

[1] Although Katie provided various versions of the events leading to P.'s death, this version, along with another similar one, was presented to the jury, as well as her confession to Higdon's former attorney that she had killed P. and her subsequent recantation of that admission.

Answer (Doc. 12), Ct. App. Mem. Decision 5/25/2006 (Exh. "A") at ¶¶ 2-3.

A jury convicted David A. Higdon of "first-degree murder and armed robbery." *Id.* at ¶ 1; *see also* Answer (Doc. 12) Hr'g Tr. 1/27/2005 (Exh. "N") 9:25-10:21. Petitioner was sentenced "to natural life in prison for the murder conviction and to a concurrent, 15.75-year presumptive term for the armed robbery conviction." Answer (Doc. 12), Exh. "A" at ¶ 1; *see also* Answer (Doc. 12), Hr'g Tr. 3/28/2005 (Exh. "P") 43:12-45:21.

### A.    Direct Appeal

Petitioner appealed his convictions to the Arizona Court of Appeals, raising the single claim that the trial court erred in admitting evidence regarding Petitioner's actions while incarcerated in the Pima County Jail, as well as evidence regarding skinheads in generall,

---

*v. Lundy*, 455 U.S. 509, 519, 102 S.Ct. 1198, 1204, 71 L.Ed.2d 379 (1982).

because it was improper other acts evidence used to show Petitioner's bad character, and its prejudice outweighed its probative value.  Answer (Doc. 12), Appellant's Opening Brief (Exh. "Q") at 13–16.

On May 25, 2006, the Arizona Court of Appeals affirmed Petitioner's convictions. *See* Answer (Doc. 12), Exh. "A."  The Arizona Court of Appeals found that "the [trial] court did not err in refusing to exclude the evidence either [Rule 403 or Rule 404(b), Arizona Rules of Evidence]."  *Id.* at ¶ 9.  Furthermore, "[t]he trial court found the evidence relevant, admitted it for a purpose other than proving Higdon's criminal propensity in this matter, and correctly noted that it was up to the jury to assess the 'motivation behind' and the 'truthfulness' of the evidence."  *Id.*  The Arizona Court of Appeals also noted that "the evidence was clearly admissible under 404(b) to show motive and identification" and the trial court gave the jury a limiting instruction.  *Id.* at ¶¶ 9-10.

On June 26, 2006, Petitioner filed his Petition for Review by the Arizona Supreme Court.  Answer (Doc. 12), Exh. "R."  On February 8, 2007, Petitioner's petition for review was denied by the Arizona Supreme Court without comment.  *See* Answer (Doc. 12), Ariz. Supreme Ct. Minutes 2/8/2007 (Exh. "S").

### B.    Post-Conviction Relief Proceeding

On April 26, 2007, Petitioner filed his Notice of Post-Conviction Relief.  Answer (Doc. 12), Exh. "T."  On May 1, 2009, Petitioner filed a Partial Petition for Post-Conviction Relief.  Answer (Doc. 12), Exh. "U."  Petitioner claimed, *inter alia*, that 1) his "rights to due process, fair trial, confrontation, and assistance of counsel were violated by prosecutorial misconduct and *Strickland* error relating to Thompson; 2) his rights to due process and a fair trial were violated because the prosecution introduced misleading or foundationless evidence regarding the line of sight between cells 21/28 and trial counsel was ineffective regarding the same; 3) trial counsel was ineffective by failing to challenge premeditation; 4) insufficient evidence supported Petitioner's felony murder conviction and trial counsel was ineffective regarding the same violating Petitioner's right to due process and counsel; 5) trial counsel was ineffective regarding Petitioner's "mere presence" and Farabaugh's alleged

responsibility; 6) trial counsel was ineffective by failing to object to various arguments made by the prosecution; 7) trial counsel's failure to investigate and impeach Leyden's testimony regarding skinhead culture violated Petitioner's right to a fair trial and confrontation and rendered counsel's assistance ineffective; 8) ineffective assistance of counsel based on trial counsel's failure to adequately challenge aggravating factors in sentencing; 9) ineffective assistance of counsel based on trial counsel's failure to present "more and better mitigation" and obtain a more lenient sentence; and 10) ineffective assistance of appellate counsel. Answer (Doc. 12), Exh. "U."

On August 6, 2009, the trial court dismissed Petitioner's post-conviction relief petition. *See* Answer (Doc. 12), In Chambers Ruling, Re: Pet. for PCR 8/6/2009 (Exh. "O"). As an initial matter, the court found that all of Petitioner's prosecutorial misconduct claims, as well as his claims regarding the sufficiency of the evidence to support his first-degree murder conviction on a felony murder theory, and whether the trial court erred when it determined that Farabaugh was unavailable to testify and allowed the State to play her videotaped deposition were precluded pursuant to Rule 32.2(a), Arizona Rules of Criminal Procedure, because Petitioner failed to raise them on direct appeal. *Id.* at 4. The trial court also noted that Petitioner's claim regarding insufficiency of the evidence to support the jury's finding of guilt on the first-degree murder charge based on a theory of felony murder lacks merit, because the jury's finding of guilt was based on both premeditation and felony murder, and as such even if the evidence was insufficient with regard to felony murder Petitioner did not suffer any prejudice. *Id.* The trial court also noted it devoted an entire hearing to whether Farabaugh would invoke her right to remain silent and whether this must occur before the jury, and reviewed its previous orders and confirmed the sound reasoning therein. *Id.*

The court analyzed Petitioner's claims of newly discovered evidence as witnesses Marshall Thompson and Thomas Leyden pursuant to *State v. Saenz*, 197 Ariz. 487, 489, 4 P.3d 1030, 1032 (Ct. App. 2000) and Rule 32.1(e), Arizona Rules of Criminal Procedure. Answer (Doc. 12), Exh. "O" at 5-6.   Regarding Thompson's pre-sentence reports and

Petitioner's claim that Leyden "may" have committed perjury based on a CNN interview, the court found that Petitioner "failed to meet his burden of showing by a preponderance of the evidence that any of his new claims based on the existence of newly-discovered evidence are colorable." *Id.* at 6. The court further stated that Petitioner "failed to raise a material issue of fact or law which would entitle him to an evidentiary hearing on this basis." *Id.*

The court delineated the standard for ineffective assistance of counsel as follows: [Petitioner] must show that counsel's performance fell below objectively reasonable standards, and that this poor performance prejudiced him." *Id.* at 7 (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); *State v. Jackson*, 209 Ariz. 13, 14, 97 P.3d 113, 114 (2005); *State v. Nash*, 143 Ariz. 392, 397, 694 P.2d 222, 227 (1985)). The court noted that Thompson's pre-sentence reports were inadmissible hearsay and his juvenile records were also inadmissible. *Id.* at 8. The court further found that Petitioner's claim that "Thompson was granted 'tacit transactional immunity,' as well as his claim that "Thompson lied about the amount of time he faced in his pending cases[,]" were baseless, and "that trial counsel's efforts to impeach Thompson were more than adequate." Answer (Doc. 12), Exh. "O" at 8-9. The court found that counsel argued "that Thompson was less credible because the sentencing hearing in his pending case was continued until after he testified against the Petitioner." *Id.* at 10. Accordingly, "[b]ecause counsel advanced the exact argument proposed by the Petitioner, [the] [c]ourt finds that he has failed to show that her representation was substandard or that he suffered prejudice." *Id.*

The court found "the fact that the prosecutor assigned to Petitioner's case – Ms. Godoy – happened to work with the prosecutor assigned to Thompson's other cases is not evidence that she exercised any sort of impermissible influence over Thompson's case." *Id.* The court further found that "trial counsel thoroughly impeached Thompson's credibility, and even went so far to argue that the prosecutor 'bought' his testimony[.]" *Id.* at 11. As such, the court found that Petitioner was not prejudiced. *Id.* Regarding the line-of-sight between jail cells, the court found that "Petitioner's own exhibits show that this claim has absolutely no merit[,] . . . [and] Ms. Berry's decision to not introduce photos was a tactical

1   one and had a reasonable basis." Answer (Doc. 12), Exh. "O" at 11.  The court also found

2   that Petitioner's claim "that trial counsel was ineffective because she failed to adequately

3   challenge the State's premeditation theory[,]" "had a reasonable tactical basis." *Id.* at 11-12.

4   As such, the court found "that the Petitioner has failed to show that counsel's performance

5   was substandard or that he suffered prejudice." *Id.* at 12.

6        The court further found "that [trial] counsel was not ineffective, and that the Petitioner

7   suffered no prejudice" regarding her alleged failure "to argue that there were several

8   inconsistencies between Farabaugh's many statements." *Id.* The trial court stated that "[t]his

9   argument is clearly controverted by the record." *Id.* The court found that Petitioner "ha[d]

10   not produced any evidence showing that he was prejudiced" by trial counsel's alleged failure

11   to rehabilitate the credibility of Michael Higdon regarding Petitioner's possible affiliation

12   with white supremacist groups.  Answer (Doc. 12), Exh. "O" at 12-13.  Accordingly, the

13   court found that Petitioner was not entitled to relief on this claim. *Id.* at 13.  The court found

14   that Petitioner's claim that trial counsel was "ineffective for failing to investigate whether

15   the Petitioner had any ties to skinhead groups prior to 2002, or for failing to get officers to

16   admit that they had no evidence of any such ties . . . [was,] again, controverted by the

17   record." *Id.*   As such, trial counsel was not ineffective. *Id.*

18        The court found that trial counsel requested a jury instruction regarding a lack of

19   motive establishing innocence or raising reasonable doubt as to premeditation; however, it

20   was denied by the trial court. *Id.* The court further found that "[b]ecause trial counsel made

21   the exact request the Petitioner feels she should have, he . . . failed to show that her

22   performance was substandard . . [or] that he suffered prejudice."  Answer (Doc. 12), Exh.

23   "O" at 13-14.  The court found that Petitioner "failed to show that counsel's representation

24   was substandard or that he suffered any prejudice" regarding trial counsel's failure to secure

25   immunity for Farabaugh. *Id.* at 14.  The State refused counsel's request, and based upon

26   Arizona law, a trial court can only grant judicial immunity "after the State has filed a written

27   request for such a grant." *Id.* The court also found that Petitioner's claim "that trial counsel

28   was ineffective because she failed to anticipate what the prosecutor would argue in her

1    rebuttal closing, and because she failed to voice any objections to the prosecutor's rebuttal"

2    without merit.  *Id.*

3          The court found that Petitioner "failed to carry his burden" regarding his claim "that

4    Leyden may have committed perjury when he testified as to what blackened bolt tattoos

5    mean in skinhead culture" and that trial counsel was ineffective for failing to impeach him.

6    *Id.* at 15.  Regarding Petitioner's claim that trial counsel was ineffective for failing to call her

7    own skinhead expert, James Hamm, to rebut Leyden's testimony.  Answer (Doc. 12), Exh.

8    "O" at 15.  Trial counsel stated at deposition that "she had been 'gravely disappointed' by

9    his testimony and felt that he was 'very impeachable'" . . . [and] that she felt that Hamm may

10   have lied during the pretrial hearing."  *Id.*  Accordingly, the court found her decision not to

11   call Hamm at trial a "reasonable tactical [decision,] . . . required by the ethical code

12   governing attorney conduct."  *Id.*

13         Regarding Petitioner's claims "that trial counsel was ineffective because the

14   arguments she presented in favor of a 25-to-life sentence for the first-degree murder charge

15   were inadequate[,]" the court found that Petitioner was not prejudiced.  *Id.* at 16.  Based upon

16   Arizona state law, the court found that "there was more than enough evidence from which

17   the court could determine that a sentence of natural life was appropriate."  *Id.*  Finally, the

18   court found that Petitioner failed to establish prejudice based upon appellate counsel's

19   decision to "raise[] the strongest – and only – issues she could" on appeal.  Answer (Doc.

20   12), Exh. "O" at 17.  Having considered all the issues presented, the trial court summarily

21   dismissed Petitioner's PCR petition.  *Id.* at 18.

22         On June 21, 2010, Petitioner filed a petition for review by the Arizona Court of

23   Appeals.  Answer (Doc. 12), Pet. for Review From Denial of Rule 32 Relief (Exh. "W").  On

24   April 29, 2010, the Arizona Court of Appeals granted review, but denied relief.  Answer

25   (Doc. 12), Mem. Decision 4/29/2010 (Exh. "X").  Upon review of the trial court's minute

26   entry, the court of appeals found that "the trial court clearly identified, thoroughly analyzed,

27   and correctly resolved all of the issues [Petitioner] had presented in his petition for post-

28   conviction relief."  *Id.* at 2.  The Arizona Court of Appeals further stated, "[w]e find no abuse

1    of discretion in the trial court's ruling dismissing Higdon's petition for post-conviction relief
2    and no purpose in rehashing it here because it is readily understandable by any court in the
3    future; thus, we approve and adopt the ruling." *Id.* at 3-4 (citing *State v. Whipple*, 177 Ariz.
4    272, 274, 866 P.2d 1358, 1360 (Ct. App. 1993)).

5          On August 20, 2010, Petitioner sought review by the Arizona Supreme Court of the
6    denial of his PCR petition.  Answer (Doc. 12), Pet. for Review From Denial of Rule 32
7    Relief (Exh. "Y").  On December 21, 2010, the Arizona Supreme Court summarily denied
8    Petitioner's petition.  Answer (Doc. 12), Ariz. Supreme Ct. ME 12/21/2010 (Exh. "Z").

9          **C.    *The Instant Habeas Proceeding***

10          On December 20, 2011, Petitioner filed his Petition for Writ of Habeas Corpus by a
11   Person in State Custody Pursuant to 28 U.S.C. § 2254 (Non-Death Penalty) (Doc. 1).
12   Petitioner claims eight (8) grounds for relief, with some issues including multiple subparts.
13   First, Petitioner asserts a claim that "[b]oth convictions were obtained in violation of the
14   federal rights to due process and fair trial guaranteed by the Fifth, Sixth, and Fourteenth
15   Amendments." Petition (Doc. 1) at 3.  This ground for relief includes "supporting facts" that
16   appear to be additional claims.  *See id.*  These allegations include: (a) the prosecution allowed
17   witness Marshall Thompson "to falsely deny and/or minimize the benefits he received for
18   testifying[;]" (b) "the prosecution allowed Thompson to maintain his very favorable plea
19   agreement" despite his testimony falsely minimizing his benefits; (c) "the prosecution made
20   a tacit grant of transactional immunity[;]" (d) "the lead prosecutor's control over Thompson
21   was misrepresented[;] (e) "the prosecution unfairly admitted unredacted plea agreements and
22   vouched for Thompson's credibility[;]" (f) "the prosecution allowed or took advantage of
23   Thompson's denial" regarding any understanding about the prosecution's sentencing
24   recommendation; (g) "the prosecution knew or should have known Thompson had reason
25   and motive to offer false/erroneous testimony[;]" and (h) "the prosecution never disclosed
26   Thompson's receipt of illegal benefits after he testified." *Id.* at 3-4.  Second, Petitioner
27   asserts "[b]oth convictions were maintained in violation of federal due process and the right
28   to counsel guaranteed by the Fifth/Sixth/Fourteenth Amendments[,] . . . [because] [t]he state

post-conviction court affirmed Petitioner's unconstitutional convictions by precluding misconduct claims . . . and . . . failed to . . . address that preclusion directly related [to] *Strickland* error by appellate counsel." *Id.* at 5. Third, Petitioner claims ineffective assistance of trial counsel based on her alleged failure to "adequately understand the law, record, investigate and confront 'Thompson' . . . and to impeach Thompson's credibility with 10 known juvenile adjudications." *Id.* at 6. Fourth, Petitioner asserts that "[b]oth convictions were unconstitutionally maintained . . . when the state post-conviction court declined to conduct a cumulative analysis of the prosecutorial misconduct . . . [and] *Strickland* claims[,] . . . [and by denying] an evidentiary hearing[.]" Petition (Doc. 1) at 7. Fifth, Petitioner asserts ineffective assistance of counsel regarding trial counsel's alleged failure to "adequately investigate or impeach the prosecutions [sic] expert witness who testified regarding 'Skinhead' culture[,]" by not seeking "*Brady* material challenging the foundation for the expert's credentials or credibility[,]" by not calling a rebuttal defense expert, and by not using a subsequent CNN program to impeach the expert's credibility. *Id.* at 8. Sixth, Petitioner asserts ineffective assistance of counsel based on alleged failure "to either preclude entire or significant portions of out-of-court statements or secure the testimony of Katy Farabaugh . . . by seeking a grant of judicial immunity." *Id.* at 9. Seventh, Petitioner asserts ineffective assistance of counsel based on trial counsel's alleged failure "to adequately challenge the prosecution's asserted evidence of 'premeditation' and/or robbery motive[.]" *Id.* at 10. Eighth, Petitioner asserts ineffective assistance of counsel based on trial counsel's alleged failure "to ameliorate the circumstances of two prior felonies used to aggravate sentences, and fail[ure] to offer more and better mitigation." *Id.* at 11. On April 27, 2012, Respondents filed their Answer to Petition for Writ of Habeas Corpus ("Answer") (Doc. 12). Petitioner subsequently filed his Traverse re: State Prisoner Habeas Petition (Doc. 23).

## II.   STANDARD OF REVIEW

### A.   *In General*

1    The federal courts shall "entertain an application for a writ of habeas corpus in behalf

2    of a person in custody pursuant to the judgment of a State court only on the ground that he

3    is in custody *in violation of the Constitution or laws or treaties of the United States*."  28

4    U.S.C. § 2254(a) (emphasis added).  Moreover, a petition for habeas corpus by a person in

5    state custody:

> shall not be granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the claim – (1)
> resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the evidence presented in
> the State court proceeding.

10   28 U.S.C. § 2254(d); *see also Cullen v. Pinholster*, — U.S. — , 131 S.Ct. 1388, 1398, 179

11   L.Ed.2d 557 (2011).  Correcting errors of state law is not the province of federal habeas

12   corpus relief.  *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 480, 116 L.Ed.2d 385

13   (1991). Ultimately, "[t]he statute's design is to 'further the principles of comity, finality, and

14   federalism.'" *Panetti v. Quarterman*, 551 U.S. 930, 945, 127 S.Ct. 2842, 2854, 168 L.Ed.2d

15   662 (2007) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 337, 123 S.Ct. 1029, 154 L.Ed.2d

16   931 (2003)).  Furthermore, this standard is difficult to meet and highly deferential "for

17   evaluating state-court rulings, [and] which demands that state-court decisions be given the

18   benefit of the doubt."  *Pinholster*, 131 S.Ct. at 1398 (citations and internal quotation marks

19   omitted).

20   The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat.

21   1214, mandates the standards for federal habeas review.  *See* 28 U.S.C. § 2254.  "AEDPA

22   erects a formidable barrier to federal habeas relief for prisoners whose claims have been

23   adjudicated in state court."  *Burt v. Titlow*, — U.S. —, 134 S.Ct. 10, 16, 187 L.Ed.2d 348

24   (2013).  Federal courts reviewing a petition for habeas corpus must "presume the correctness

25   of state courts' factual findings unless applicants rebut this presumption with 'clear and

26   convincing evidence.'" *Schriro v. Landrigen*, 550 U.S. 465, 473-74, 127 S.Ct. 1933, 1940,

27   167 L.Ed.2d 836 (2007) (citing 28 U.S.C. § 2254(e)(1)).  Moreover, on habeas review, the

28   federal courts must consider whether the state court's determination was unreasonable, not

1   merely incorrect. *Id.*, 550 U.S. at 473, 127 S.Ct. at 1939; *Gulbrandson v. Ryan*, 738 F.3d

2   976, 987 (9th Cir. 2013). Such a determination is unreasonable where a state court properly

3   identifies the governing legal principles delineated by the Supreme Court, but when the court

4   applies the principles to the facts before it, arrives at a different result. *See Harrington v.*

5   *Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011); *Williams v. Taylor*, 529 U.S.

6   362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *see also Casey v. Moore*, 386 F.3d 896, 905

7   (9th Cir. 2004). "AEDPA requires 'a state prisoner [to] show that the state court's ruling on

8   the claim being presented in federal court was so lacking in justification that there was an

9   error . . . beyond any possibility for fairminded disagreement.'" *Burt*, 134 S.Ct. at 10

10  (quoting *Harrington*, 562 U.S. at 103, 131 S.Ct. at 786-87) (alterations in original).

11              **B.      Exhaustion of State Remedies**

12              Prior to application for a writ of habeas corpus, a person in state custody must exhaust

13  all of the remedies available in the State courts. 28 U.S.C. § 2254(b)(1)(A). This "provides

14  a simple and clear instruction to potential litigants: before you bring any claims to federal

15  court, be sure that you first have taken each one to state court." *Rose v. Lundy*, 455 U.S. 509,

16  520, 102 S.Ct. 1198, 1204, 71 L.Ed.2d 379 (1982). As such, the exhaustion doctrine gives

17  the State "the opportunity to pass upon and correct alleged violations of its prisoners' federal

18  rights." *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 1349, 158 L.Ed.2d 64 (2004)

19  (internal quotations omitted). Moreover, "[t]he exhaustion doctrine is principally designed

20  to protect the state courts' role in the enforcement of federal law and prevent disruption of

21  state judicial proceedings." *Rose v. Lundy*, 455 U.S. at 518, 102 S.Ct. at 1203 (internal

22  citations omitted). This upholds the doctrine of comity which "teaches that one court should

23  defer action on causes properly within its jurisdiction until the courts of another sovereignty

24  with concurrent powers, and already cognizant of the litigation, have had an opportunity to

25  pass upon the matter." *Id.* (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 590,

26  94 L.Ed. 761 (1950)).

27              Section 2254(c) provides that claims "shall not be deemed . . . exhausted" so long as

28  the applicant "has the right under the law of the State to raise, by any available procedure the

question presented."  28 U.S.C. § 2254(c).  "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971).  The fair presentation requirement mandates that a state prisoner must alert the state court "to the presence of a federal claim" in his petition, simply labeling a claim "federal" or expecting the state court to read beyond the four corners of the petition is insufficient. *Baldwin v. Reese*, 541 U.S. 27, 33, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004) (rejecting petitioner's assertion that his claim had been "fairly presented" because his brief in the state appeals court did not indicate that "he was complaining about a violation of federal law" and the justices having the opportunity to read a lower court decision addressing the federal claims was not fair presentation); *Hiivala v. Wood*, 195 F.3d 1098 (9th Cir. 1999) (holding that petitioner failed to exhaust federal due process issue in state court because petitioner presented claim in state court only on state grounds).  Furthermore, in order to "fairly present" one's claims, the prisoner must do so "in each appropriate state court." *Baldwin*, 541 U.S. at 29, 124 S.Ct. at 1349.  "Generally, a petitioner satisfies the exhaustion requirement if he properly pursues a claim (1) throughout the entire direct appellate process of the state, or (2) throughout one entire judicial postconviction process available in the state." *Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004) (quoting Liebman & Hertz, *Federal Habeas Corpus Practice and Procedure*, §23.3b (4th ed. 1998)).

In Arizona, however, for non-capital cases "review need not be sought before the Arizona Supreme Court in order to exhaust state remedies." *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999); *see also Crowell v. Knowles*, 483 F.Supp.2d 925 (D. Ariz. 2007); *Moreno v. Gonzalez*, 192 Ariz. 131, 962 P.2d 205 (1998).  Additionally, the Supreme Court has further interpreted § 2254(c) to recognize that once the state courts have ruled upon a claim, it is not necessary for an applicant to seek collateral relief for the same issues already decided upon direct review. *Castille v. Peoples*, 489 U.S. 346, 350, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989).

**C.**   ***Procedural Default***

1    "A habeas petitioner who has defaulted his federal claims in state court meets the

2    technical requirements for exhaustion; there are no state remedies any longer 'available' to

3    him." *Coleman v. Thompson*, 501 U.S. 722, 732, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640

4    (1991).  Moreover, federal courts "will not review a question of federal law decided by a

5    state court if the decision of that court rests on a state law ground that is independent of the

6    federal question and adequate to support the judgment." *Id.*, 501 U.S. at 728, 111 S.Ct. at

7    2554.  This is true whether the state law basis is substantive or procedural.  *Id.* (citations

8    omitted).  Such claims are considered procedurally barred from review.  *See Wainwright v.*

9    *Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

10    The Ninth Circuit explained the difference between exhaustion and procedural default

11    as follows:

12       The exhaustion doctrine applies when the state court has never been presented
         with an opportunity to consider a petitioner's claims and that opportunity may
13       still be available to the petitioner under state law.  In contrast, the procedural
         default rule barring consideration of a federal claim applies only when a state
14       court has been presented with the federal claim, but declined to reach the issue
         for procedural reasons, or if it is clear that the state court would hold the claim
15       procedurally barred. *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002)
         (internal quotation marks and citations omitted).  Thus, in some circumstances,
16       a petitioner's failure to exhaust a federal claim in state court may *cause* a
         procedural default.  *See Sandgathe v. Maass*, 314 F.3d 371, 376 (9th Cir.
17       2002); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002) ("A claim is
         procedurally defaulted 'if the petitioner failed to exhaust state remedies and the
18       court to which the petitioner would be required to present his claims in order
         to meet the exhaustion requirement would now find the claims procedurally
19       barred.'" (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1, 111 S.Ct.
         2546, 115 L.Ed.2d 640 (1991))).

20    *Cassett v. Stewart*, 406 F.3d 614, 621 n.5 (9th Cir. 2005).  Thus, a prisoner's habeas petition

21    may be precluded from federal review due to procedural default in two ways.  First, where

22    the petitioner presented his claims to the state court, which denied relief based on

23    independent and adequate state grounds.  *Coleman*, 501 at 728, 111 S.Ct. at 2254.  Federal

24    courts are prohibited from review in such cases because they have "no power to review a

25    state law determination that is sufficient to support the judgment, resolution of any

26    independent federal ground for the decision could not affect the judgment and would

27    therefore be advisory." *Id.*  Second, where a "petitioner failed to exhaust state remedies and

28

1    the court to which the petitioner would be required to present his claims in order to meet the

2    exhaustion requirement would now find the claims procedurally barred." *Id.* at 735 n.1, 111

3    S.Ct. at 2557 n.1 (citations omitted).  Thus, the federal court "must consider whether the

4    claim could be pursued by any *presently available* state remedy."  *Cassett*, 406 F.3d at 621

5    n.6 (quoting *Ortiz v. Stewart*, 149 F.3d 923, 931 (9th Cir. 1998) (emphasis in original).

6        Where a habeas petitioner's claims have been procedurally defaulted, the federal

7    courts are prohibited from subsequent review unless the petitioner can show cause and actual

8    prejudice as a result.  *Teague v. Lane*, 489 U.S. 288, 298, 109 S.Ct. 1060, 1068, 103 L.Ed.2d

9    334 (1989) (holding that failure to raise claims in state appellate proceeding barred federal

10    habeas review unless petitioner demonstrated cause and prejudice); *see also Smith v. Murray*,

11    477 U.S. 527, 534, 106 S.Ct. 2661, 2666, 91 L.Ed.2d 434 (1986) (recognizing "that a federal

12    habeas court must evaluate appellate defaults under the same standards that apply when a

13    defendant fails to preserve a claim at trial.").  "[T]he existence of cause for a procedural

14    default must ordinarily turn on whether the prisoner can show that some objective factor

15    external to the defense impeded counsel's efforts to comply with the State's procedural rule."

16    *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986); *see also*

17    *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any

18    cause "for procedurally defaulting his claims of ineffective assistance of counsel, [as such]

19    there is no basis on which to address the merits of his claims.").  In addition to cause, a

20    habeas petitioner must show actual prejudice, meaning that he "must show not merely that

21    the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and

22    substantial disadvantage, infecting his entire trial with error of constitutional dimensions."

23    *Murray*, 477 U.S. at 494, 106 S.Ct. at 2648 (emphasis in original) (internal quotations

24    omitted).  Without a showing of both cause and prejudice, a habeas petitioner cannot

25    overcome the procedural default and gain review by the federal courts.  *Id.*, 106 S.Ct. at

26    2649.

27        The Supreme Court has recognized, however, that "the cause and prejudice standard

28    will be met in those cases where review of a state prisoner's claim is necessary to correct 'a

fundamental miscarriage of justice.'" *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (quoting *Engle v. Isaac* 456 U.S. 107, 135, 102 S.Ct. 1558, 1572-73, 71 L.Ed.2d 783 (1982)).   "The fundamental miscarriage of justice exception is available 'only where the prisoner *supplements* his constitutional claim with a colorable showing of factual innocence.'" *Herrara v. Collins*, 506 U.S. 390, 404, 113 S.Ct. 853, 862, 122 L.Ed.2d 203 (1993) (emphasis in original) (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 454, 106 S.Ct. 2616, 2627, 91 L.Ed.2d 364 (1986)).   Thus, "'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrara*, 506 U.S. at 404, 113 S.Ct. at 862.   Further, in order to demonstrate a fundamental miscarriage of justice, a habeas petitioner must "establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B).

In Arizona, a petitioner's claim may be procedurally defaulted where he has waived his right to present his claim to the state court "at trial, on appeal or in any previous collateral proceeding." Ariz. R. Crim. P. 32.2(a)(3).   "If an asserted claim is of sufficient constitutional magnitude, the state must show that the defendant 'knowingly, voluntarily and intelligently' waived the claim." *Id.*, 2002 cmt.   Neither Rule 32.2 nor the Arizona Supreme Court has defined claims of "sufficient constitutional magnitude" requiring personal knowledge before waiver. *See id.*; *See also Stewart v. Smith*, 202 Ariz. 446, 46 P.3d 1067 (2002).   The Ninth Circuit recognized that this assessment "often involves a fact-intensive inquiry" and the "Arizona state courts are better suited to make these determinations." *Cassett*, 406 F.3d at 622.

## III.   STATUTE OF LIMITATIONS

As a threshold matter, the Court must consider whether Petitioner's petition is barred by the statute of limitations. *See White v. Klitzkie*, 281 F.3d 920, 921-22 (9th Cir. 2002). The AEDPA mandates that a one-year statute of limitations applies to applications for a writ

of habeas corpus by a person in state custody.  28 U.S.C. § 2244(d)(1).  Section 2244(d)(1) provides that the limitations period shall run from the latest of:

> (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)   the date on which the impediment to filing an application created by the State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1); *Shannon v. Newland*, 410 F.3d 1083 (9th Cir. 2005).  "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2).  Respondents do not dispute the timeliness of Higdon's Petition.  The Court has independently reviewed the record and finds that the Petition is timely pursuant to 28 U.S.C. § 2244(d)(1)(A).

## IV.   ANALYSIS

### A.   *Ground One: Prosecutorial Misconduct*

Petitioner asserts that "[b]oth convictions were obtained in violation of federal rights to due process and fair trial guaranteed by the Fifth, Sixth and Fourteenth Amendments." Petition (Doc. 1) at 3.  The "supporting facts" alleged by the Petitioner and discussed in Section I.C., *supra*, delineate his claims for prosecutorial misconduct involving the prosecution's treatment of the witness Marshall Thompson.  *See id.* at 3-4.  Respondents argue that "[t]he state courts found all of Higdon's prosecutorial-misconduct claims in Ground I procedurally defaulted and precluded from review under the independent and adequate state-ground doctrine."  Answer (Doc. 12) at 7 (citations omitted).  This Court agrees.

1    This issue, including with its many sub-parts, was originally asserted in Petitioner's

2    petition for post-conviction relief. *See* Answer (Doc. 12), Exh. "U." In its August 6, 2009

3    order, the trial court stated as follows:

4    　　　Rule 32.2(a), Ariz. R. Crim. P., precludes a petitioner from seeking
     relief for any claim that was "[r]aisable on direct appeal," "[f]inally
5    adjudicated on the merits on appeal or in any previous collateral proceeding,"
     or "waived at trial, on appeal, or in any previous collateral proceeding."[3]
6    Although " the state has the burden to plead and prove grounds of preclusion,
     any court on review of the record may determine and hold that an issue is
7    precluded regardless of whether the state raises preclusion." Ariz. R. Crim. P.
     32.2(c); *see also* A.R.S. § 13-4232(C). Pursuant to Rule 32.6(c), Ariz. R.
8    Crim. P., a court "shall order the petition dismissed" if it finds that all of a
     petitioner's claims are procedurally precluded and "no purpose would be
9    served by any further proceedings."

10   　　　The Petitioner raises several arguments that are precluded because he
     failed to raise them at the time of his direct appeal. These arguments include
11   all of the Petitioner's claims regarding prosecutorial misconduct[.] . . . The
     Petitioner has not argued why any of these claims would survive preclusion,
12   and the Court has been unable to find any such reason based on its review of
     the record in this case.

13   　　　　　　　　　　　　　　　
14   [3] The only types of claims that may not be precluded under Rules 32.2(a)
     include: (1) that the petitioner is "being held in custody after the sentence
15   imposed has expired;" (2) claims based on the existence of newly discovered
     evidence; (3) that the petitioner's failure to file a timely appeal or petition for
16   post-conviction relief was not his fault; (4) that there has been a significant
     change in the law that would apply to the petitioner's case; and (5) that the
17   evidence clearly shows that no reasonable fact finder could have found
     petitioner guilty.

18   Answer (Doc. 12), Exh. "U" at 4. The Arizona Court of Appeals held that "the [lower] court

19   correctly found Higdon's claims of prosecutorial misconduct precluded because he had failed

20   to raise them on appeal. *See* Ariz. R. Crim. P. 32.2(a)(3) (defendant precluded from relief on

21   any ground waived on direct appeal)." Answer (Doc. 12), Exh. "X" at 3.

22   　　　Petitioner's claims regarding prosecutorial misconduct are therefore procedurally

23   defaulted. Petitioner presented his claim to the state court, which denied relief based on

24   independent and adequate state grounds. *See Coleman*, 501 at 728, 111 S.Ct. at 2254. The

25   state procedural bar to review now prohibits this Court from review because the "state law

26   determination [] is sufficient to support the judgment, [and] resolution of any independent

27   federal ground for the decision could not affect the judgment and would therefore be

28   advisory." *Coleman*, 501 at 728, 111 S.Ct. at 2254.

1    Where a habeas petitioner's claim has been procedurally defaulted, the federal courts
2    are prohibited from subsequent review unless the petitioner can show cause and actual
3    prejudice as a result. *Teague v. Lane*, 489 U.S. 288, 298, 109 S.Ct. 1060, 1068, 103 L.Ed.2d
4    334 (1989) (holding that failure to raise claims in state appellate proceeding barred federal
5    habeas review unless petitioner demonstrated cause and prejudice). Petitioner failed to show
6    cause or demonstrate any actual prejudice, and as such the Court will not consider the merits
7    of this claim.

8        Additionally, to the extent that Petitioner argues preclusion was improper because
9    "some prosecutorial misconduct . . . occurred or was discovered <u>after</u> the trial or after the
10   appeal[,]" Petitioner's claims are similarly without merit. Reply (Doc. 23) at 6. In reviewing
11   Petitioner's PCR petition, the court considered Thompson's pre-sentence reports as "newly
12   discovered" evidence. Answer (Doc. 12), Exh. "O" at 5. Relying on *State v. Saenz*, 197
13   Ariz. 487, 489, 4 P.3d 1030, 1032 (Ct. App. 2000), the trial court determined that "Petitioner
14   ha[d] failed to show that the presentence reports meet any of the . . . requirements [for newly
15   discovered evidence]." Answer (Doc. 12), Exh. "O" at 5. Furthermore, the court "reviewed
16   the pre-sentence reports and – in light of trial counsel's thorough and unforgiving cross-
17   examination — can find no evidence which could have damaged Thompson's credibility any
18   further or which 'probably would have changed the verdict.'" *Id.* (citing *Saenz*, 197 Ariz. at
19   489, 4 P.3d at 1032). The Arizona Court of Appeals subsequently recognized that "[t]o the
20   extent [the prosecutorial misconduct] claims were intertwined with his claims of newly
21   discovered evidence, the court thoroughly addressed them." Answer (Doc. 12), Exh. "X" at
22   3. As such, Petitioner presented his claim to the state court, which denied relief based on
23   independent and adequate state grounds, and this Court is prohibited from review. *See*
24   *Coleman*, 501 at 728, 111 S.Ct. at 2254. Again, Petitioner has failed to demonstrate cause
25   or actual prejudice for this Court to review the merits of his claims.

26       **B.      Ground Two: Preclusion and Ineffective Assistance of Appellate Counsel**
27       Petitioner asserts that "[t]he state post conviction court affirmed Petitioner's
28   unconstitutional convictions by precluding misconduct claims in violation of federal due

process and/or failed to acknowledge and address that preclusion directly related *Strickland* error by appellate counsel." Petition (Doc. 1) at 5.  Petitioner further contends that "appellate counsel's failure to assert prosecutorial misconduct as fundamental error fell below the standard of care and was prejudicial as Petitioner will be stopped from receiving a merits ruling on serious prosecutorial misconduct."  Reply (Doc. 11) at 17 (emphasis in original). Respondents argue that Petitioner's due process claim is not properly exhausted, because he "made only a vague and conclusory allegation of due-process error."  Answer (Doc. 12) at 7 (citations omitted).  Respondents further state, "[e]ven were Higdon's other due-process claims properly before this Court . . . [his] assertion in Ground II that due-process principles prohibit courts from precluding procedurally defaulted claims flies in the face of long-established federal and state law."  *Id.* at 7 n. 2.  Finally, "[h]is other claim in Ground II that the state trial court failed to acknowledge and address his claim regarding appellate defense counsel's failure to raise any prosecutorial-misconduct claims on direct appeal is belied by the state-court record."  *Id.* at 7-8 n. 2 (citations omitted).

"The procedural default rule barring consideration of a federal claim applies . . . when a state court has been presented with the federal claim, but declined to reach the issue for procedural reasons[.]"  *Cassett v. Stewart*, 406 F.3d 614, 621 n.5 (9th Cir. 2005) (citing *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002)).  In this case, the state court found, based on the Arizona procedural rules, that Petitioner's claims regarding prosecutorial misconduct were precluded from review. *See* Answer (Doc. 12), Exh. "U" at 4.  As discussed in Section IV.A., *supra*, this constitutes an independent and adequate state ground, and is prohibited from review by this Court.  *See Coleman*, 501 at 728, 111 S.Ct. at 2254.

Regarding Petitioner's claim of ineffective assistance of appellate counsel, the Rule 32 court recognized that "[a] petitioner may challenge the effectiveness of his appellate counsel in a petition for post-conviction relief using the same standard applied to ineffective assistance of trial counsel claims."  Answer (Doc. 12), Exh. "U" at 16 (citing *Sate v. Febles*, 210 Ariz. 589, 595, 115 P.3d 629, 635 (Ct. App. 2005).  The court further properly stated the standard for an ineffective assistance of counsel claim as requiring Petitioner to show "that

counsel's performance fell below objectively reasonable standards and that this poor performance prejudiced him."   Answer (Doc. 12), Exh. "U" at 7 (citing   *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); *State v. Jackson*, 209 Ariz. 13, 14, 97 P.3d 113, 114 (2005); *State v. Nash*, 143 Ariz. 392, 397, 694 P.2d 222, 227 (1985)). The court went on to state that "[a]ppellate counsel has a duty 'to winnow[] out weaker arguments on appeal and focus[] on those more likely to prevail.'"   Answer (Doc. 12), Exh. "U" at 16 (citations omitted) (alterations in original).   Further, "[t]he mere fact that Rule 32 counsel would have adopted a different strategy on appeal does not mean that appellate counsel's strategy was faulty or that her representation fell below professional norms."   *Id.* at 17.   As such, the court found Petitioner's ineffective assistance of appellate counsel claim without merit.   *Id.*   The Arizona Court of Appeals further found that the trial court "sufficiently addressed Higdon's contention that appellate counsel had been ineffective for having failed to raise the issues on appeal."   Answer (Doc. 12), Exh. "X" at 3.

The Arizona Court of Appeals did not expressly rely on *Strickland* in its Memorandum Decision; however, it expressly affirmed the trial court's findings which did rely on *Strickland.*   The state court reasonably held that appellate counsel's failure to raise prosecutorial misconduct did not fall below professional norms based on the record in this case.   This Court agrees, and as such, finds that the Arizona courts did not unreasonably apply clearly established Federal law, and Petitioner cannot meet his burden to show prejudice.   *See Gulbrandson v. Ryan*, 738 F.3d 976, 991 (9th Cir. 2013).   Therefore, Petitioner's ineffective assistance of appellate counsel claim regarding counsel's failure to appeal his prosecutorial misconduct claim is without merit.   *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

### C.   Ground Four: Cumulative Error Analysis

Petitioner asserts that "when the state post-conviction court declined to conduct a cumulative analysis of the prosecutorial misconduct . . . [and] *Strickland* claims . . . [and] denied an evidentiary hearing[,]" his due process rights were violated.   Petition (Doc. 1) at 7.   Petitioner further argues that "[a] hearing was required to allow [him] to refute the

opposing positions and prove his allegations and inferences underlying his claims." Reply (Doc. 23) at 34.  Respondents counter that this claim was never properly exhausted, because Petitioner "made only a vague and conclusory allegation of due-process error."  Answer (Doc. 12) at 7.  Respondents further assert that Petitioner's argument "ignores the fact that the trial court did not find that any ineffective representation had occurred, singularly or otherwise."  *Id.* at 8 n. 2.

> A petition for habeas corpus by a person in state custody:
>
> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Cullen v. Pinholster*, — U.S. — , 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011).  Further, the exhaustion requirement cautions petitioners "before you bring any claims to federal court, be sure that you first have taken each one to state court." *Rose v. Lundy*, 455 U.S. 509, 520, 102 S.Ct. 1198, 1204, 71 L.Ed.2d 379 (1982); *see also* 28 U.S.C. § 2254(b)(1)(A).

Here, Petitioner raised his claim regarding the Rule 32 court's failure to perform a "cumulative analysis of prosecutorial misconduct or *Strickland* claims despite a clear obligation to do so." Answer (Doc. 12), Pet.'s Pet. for Review from Denial of Rule 32 Relief (Exh. "W") at 19 (emphasis in original).  The Supreme Court of the United States has stated, "[o]n habeas review, we follow the established rule that the state's obligation under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), to disclose evidence favorable to the defense, turns on the cumulative effect of all such evidence suppressed by the government." *Kyles v. Whitley*, 514 U.S. 419, 421, 115 S.Ct. 1555, 1560, 131 L.Ed.2d 490 (1995).  As discussed in Section IV.A., *supra*, the state court found Petitioner's prosecutorial misconduct claims procedurally defaulted.

Petitioner's argument to the Arizona Court of Appeals centered on trial counsel's alleged ineffectiveness for failing to "adequately" confront Thompson, with either "ten

additional [juvenile] convictions" or Thompson's juvenile probation and department of correction records. Answer (Doc. 12), Exh. "W" at 13-15. Petitioner admits, however, that "[t]he prosecution disclosed Thompson's ten juvenile adjudications[.]" *Id.* at 13. As such, there can be no *Brady* violation regarding the juvenile adjudications. Moreover, although "[a] defendant is entitled to material in a probation file that bears on the credibility of a significant witness in the case[,]" the Rule 32 court found that the information in the probation evidence would have been cumulative. *United States v. Strifler*, 851 F.2d 1197, 1201 (9th Cir. 1988); Answer (Doc. 12), Exh. "O" at 6.

As Respondents assert and as discussed in Section IV.D., *infra*, the state court found that trial counsel was not ineffective, a finding specifically upheld by the court of appeals. Additionally, the court of appeals held that Petitioner was not entitled to an evidentiary hearing. Answer (Doc. 12), Exh. "X" at 2. Accordingly, there is no cumulative effect of any such alleged ineffectiveness.

### D.   Grounds Three, Five, Six, Seven and Eight: Ineffective Assistance of Counsel

For cases which have been fairly presented to the State court, the Supreme Court elucidated a two part test for determining whether a defendant could prevail on a claim of ineffective assistance of counsel sufficient to overturn his conviction. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, Petitioner must show that counsel's performance was deficient. *Id.* at 687, 104 S.Ct. at 2064. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Second, Petitioner must show that this performance prejudiced his defense. *Id.* Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable." *Id.* Ultimately, whether or not counsel's performance was effective hinges on its reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065; *see also State v. Carver*, 160 Ariz. 167, 771 P.2d 1382 (1989) (adopting *Strickland* two-part test for ineffective assistance of counsel claims). The Sixth Amendment's guarantee of effective

assistance is not meant to "improve the quality of legal representation," rather it is to ensure the fairness of trial. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. "Thus, '[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct *so undermined* the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Pinholster*, — U.S. at —, 131 S.Ct. at 1403 (quoting *Strickland*, 466 at 686) (emphasis and alteration in original).

"The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' . . . and when the two apply in tandem, review is 'doubly' so[.]" *Harrington*, 562 U.S. at 105, 131 S.Ct. at 788 (citations omitted). Judging counsel's performance must be made without the influence of hindsight. *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. As such, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955). Without the requisite showing of either "deficient performance" or "sufficient prejudice," Petitioner cannot prevail on his ineffectiveness claim. *Strickland*, 466 U.S. at 700, 104 S.Ct. at 2071. "[T]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Gentry v. Sinclair*, – F.3d 705 F.3d 884, 899 (9th Cir. 2013) (quoting *Harrington v. Richter*, 131 U.S. 86 , 105 , 131 S.Ct. 770, 788, 178 L.Ed.2d 624 (2011)) (alterations in original). "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Harrington*, 131 U.S. at 104, 131 S.Ct. at 787 (citations omitted). Accordingly, "[w]e apply the doubly deferential standard to review the state court's 'last reasoned decision.'" *Vega v. Ryan*, 757 F.3d 960, 966 (9th Cir. 2014) (citations omitted). "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in 2254(d)(1) and (d)(2)." *Harrington*, 131 U.S. at 98, 131 S.Ct. at 784. The Rule 32 court properly stated the *Strickland* rule, as such, this Court must determine whether its conclusions were an unreasonable application thereof. *See* Answer (Doc. 12), Exh. "U" at 7; 28 U.S.C. § 2254(d).

### 1.  Claim Three:  Failure to "confront" witness Marshall Thompson

Petitioner asserts that his trial counsel was ineffective for failing to object to alleged prosecutorial misconduct, failing to confront witness Marshall Thompson "with his exposure to life in prison" and failing to impeach him with "10 known juvenile adjudications[,]" as well as failing to obtain additional probation and Department of Corrections records for impeachment.  Petition (Doc. 1) at 9.  As an initial matter, the Rule 32 court stated that "[t]he record shows that trial counsel adequately impeached Thompson with evidence of his criminal history, of cases that he had pending at the time he testified, and of the plea agreement he received from the State in return for his testimony."  Answer (Doc. 12), Exh "O" at 6.  The court went on to state that it had "reviewed the pre-sentence reports and – in light of trial counsel's thorough and unforgiving cross-examination – can find no evidence which could have damaged Thompson's credibility any further or which 'probably would have changed the verdict.'"  *Id.* (citations omitted).  As such, the court found that:

> [T]rial counsel's efforts to impeach Thompson were more than adequate.  Her cross-examination effectively elicited information concerning the plea agreement Thompson received from the State the sentencing benefit he expected to receive, and that he had prior felony convictions and currently-pending cases.  Indeed, the record shows that one of trial counsel's main strategies at the time of trial was to destroy Thompson's credibility by arguing that he did not actually know anything about the case and, instead, had a motive to fabricate his testimony in order to receive a better deal in his other pending cases.  In her closing, trial counsel argued that Thompson was less credible because the sentencing in his other cases had been postponed until after he testified against the Petitioner.  She even went so far as to argue that his testimony had been "bought" and "paid" for. . . . Given trial counsel's extensive and repeated efforts to destroy Thompson's credibility, this Court can find no evidence suggesting that the Petitioner suffered prejudice, or that trial counsel's representation was substandard.

Answer (Doc. 12), Exh. "O" at 8-9.  The Arizona Court of Appeals expressly affirmed the trial court's findings.  *See* Answer (Doc 12), Exh. "X."  Based on the foregoing, this Court finds that the Arizona courts did not unreasonably apply clearly established Federal law, and Petitioner cannot meet his burden to show prejudice.  *See Gulbrandson*, 738 F.3d at 991.  Therefore, Petitioner's ineffective assistance of counsel claim regarding counsel's impeachment of Marshall Thompson must fail.   *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

### 2.  Claim Five: Challenge to expert witness credentials and credibility

Petitioner claims that trial counsel should have "challeng[ed] the foundation for the expert's credentials or credibility[,]" "call[ed] a rebuttal defense expert[,]" and based on a subsequent CNN interview questioned Leyden's credibility.   Petition (Doc. 1) at 8.

The Rule 32 court found, and the court of appeals agreed, that trial counsel did have a rebuttal expert.  Answer (Doc. 12), Exh "O" at 15, Exh. "X" at 3-4.  This witness testified at a pretrial hearing.  Answer (Doc. 12), Exh. "O" at 15.  Counsel, however, decided not to call her expert, because she felt that he "may have lied during the pretrial hearing."  *Id.* Furthermore, she was "gravely disappointed" with his testimony and thought he would be "very impeachable."  *Id.*  As such, the trial court found that she made a tactical decision, partially mandated by the ethical rules, not to call her expert.  *Id.*

Regarding Petitioner's claim that Leyden "may" have committed perjury based on CNN and History Channel broadcasts, the Rule 32 court found these claims without merit. As an initial matter, Petitioner failed to submit either a copy of the broadcast or sufficient information for the court to find the broadcasts to the trial court, and that Petitioner's argument regarding Leyden's arrest, conviction, residential and military records was based purely on speculation.  Answer (Doc. 12), Exh. "O" at 9, 15.  Accordingly, the Rule 32 court found Petitioner's claims without merit.

This Court has reviewed the CNN transcript, and notes that it is an unsworn interview. Nothing in that transcript, or the state court record and subsequent rulings suggest that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'"  *Harrington*, 562 U.S. at 104, 131 S.Ct. at 787 (citations omitted).  Accordingly, the Court finds this claim without merit.

### 3.  Claim Six: Challenge to Farabaugh testimony

Petitioner claims that trial counsel "failed to make necessary legal arguments to either preclude entire or significant portions of out-of-court statements or secure testimony of Katy Farabaugh."  Petition (Doc. 1) at 9.  Farabaugh invoked her Fifth Amendment privilege against self incrimination, and refused to testify.  Answer (Doc. 12), Hr'g Tr. 1/11/2005

(Exh. "C") at 3:3-8:24.  The Rule 32 court found, and the court of appeals agreed, that "the State . . . specifically refused a request to grant Farabaugh immunity."  Answer (Doc. 12), Exh. "O" at 14.  Furthermore, pursuant to Arizona law the court could "only grant immunity to a witness after the State has filed a written request for such a grant."  *Id.*  Accordingly, the Rule 32 court found that Petitioner could not demonstrate prejudice from any alleged failure of trial counsel.  *Id.*  Thus, his *Strickland* claim must fail.  *Id.*  A review of the trial transcript confirms that counsel attempted to present Ms. Farabaugh as a witness.  Answer (Doc. 12), Exh. "C" at 6:19-25.  The trial court recognized that:

> [T]his is not a situation where someone invokes the fifth and the jury has no idea why or what they may have said or not said.  This is a case if it goes according to what the pretrial hearing suggested, the defense will be offering one of Ms. [Farabaugh's] out-of court statements and the State will then be offering the rebuttal statements of her's. And so the jury is going to hear what it is she had to say at different times about this event.

Answer (Doc. 12), Exh. "C" 7:25-8:8.    In light of the record before the state court, this Court agrees that Petitioner has failed to meet his burden to show ineffective assistance of counsel.  Without the requisite showing of either "deficient performance" or "sufficient prejudice," Petitioner cannot prevail on this claim.  *Strickland*, 466 U.S. at 700, 104 S.Ct. at 2071.

### 4.  Claim Seven: Challenge to premeditation

Petitioner claims that trial counsel "failed to adequately challenge the prosecution's asserted evidence of 'premeditation' and/or robbery motive" and failed to request a jury instruction regarding the same.  Petition (Doc. 1) at 10.

As an initial matter, the Rule 32 court found and the court of appeals agreed, that "[t]he record . . . shows that counsel requested . . . an instruction [regarding lack of motive], but . . . it was denied by the trial court."  Answer (Doc. 12), Exh. "O" at 13, Exh. X at 3-4. In light of this ruling, the trial court stated that the attorneys were "free to argue the issue of motive or lack thereof" and that defense counsel did, in fact, argue that Petitioner had no motive to murder the victim.  Answer (Doc. 12), Exh. "O" at 13.  Accordingly, the Rule 32 court held that "[b]ecause trial counsel made the exact request the Petitioner feels she should

have, he has failed to show that her performance was substandard." *Id.* at 14. Furthermore, the Rule 32 court found that trial counsel made a tactical decision to argue that Farabaugh was responsible for the victim's beating death, and this theory of the defense was "diametrically opposed" to the theory that Petitioner had acted on impulse. *Id.* at 12. Therefore, the court found that counsel's performance was not substandard and petitioner was not prejudiced thereby. *Id.* This Court agrees that Petitioner cannot meet his burden to demonstrate ineffective assistance of counsel.

### 5.  Claim Eight: Challenge to sentencing

Petitioner claims that trial counsel "failed to ameliorate the circumstances of two prior felonies used to aggravate sentences and failed to offer more and better mitigation." Petition (Doc. 1) at 11. The Rule 32 court declined to "address the merits of this claim because it finds that the Petitioner was not prejudiced." Answer (Doc. 12), Exh. "O" at 16. The court found that the evidence at trial showed that the "murder was motivated by the Petitioner's affiliation with the skinhead movement[,]" that the victim "had been struck approximately 51 times with a blunt object, and that the Petitioner had chased him down when he tried to escape[,]" and Petitioner had saved news articles regarding the murder, and bragged about it to other inmates. *Id.* The Rule 32 court held "[u]nder these circumstances, there was more than enough evidence from which the court could determine that a sentence of life was appropriate." *Id.* The court of appeals affirmed and adopted this ruling. *See* Answer (Doc. 12), Exh. "X" at 3-4.

A review of the sentencing hearing further demonstrates that trial counsel presented testimony of both Petitioner's father, Michael Higdon, and uncle, Joseph Higdon, regarding Petitioner's difficult childhood and the lack of any apparent affiliation with Skinheads. Answer (Doc. 12), Hr'g Tr. 3/28/2005 (Exh. "P") at 26:3-37:2. Additionally, counsel provided letters from Petitioner, his girlfriend, relatives, and friends, including a Monsignor, in support of Petitioner. In light of the evidence initially considered by the trial court and upon review in the PCR proceedings, Petitioner cannot meet his burden to demonstrate that counsel was ineffective.

## IV.   CONCLUSION

For the reasons delineated above, IT IS HEREBY ORDERED that:

1)  Petitioner's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Doc. 1) is DENIED;

2) A certificate of appealability is DENIED, because reasonable jurists would not find the Court's ruling debatable.  *See* 28 U.S.C. § 2253;

3)  This matter is DISMISSED with prejudice; and

4)  The Clerk of the Court shall close its file in this matter.

DATED this 30th day of March 2015.

Frank R. Zapata
Senior United States District Judge